In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2786

JEFFREY E. OLSON,

*Plaintiff-Appellant*,

*v.*

DONALD MORGAN, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-282-slc — **Stephen L. Crocker**, *Magistrate Judge*.

ARGUED NOVEMBER 1, 2013 — DECIDED APRIL 30, 2014

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Jeffrey Olson, an inmate in a Wisconsin prison, was attacked by his cellmate, Thomas Russell, and suffered a broken tooth in the scuffle. Olson had warned Sergeant Randy Schneider, a correctional officer, that Russell was not taking his medications and might become violent, but Sergeant Schneider did not move Olson to a new cell. After the

attack Olson brought this § 1983 lawsuit alleging that Sergeant Schneider violated the Eighth Amendment by not doing more to protect him from Russell. Because his broken tooth was not treated for several weeks, he brought another claim against the manager of the prison's health-services unit, Lillian Tenebruso, arguing that she too violated the Eighth Amendment by delaying his treatment. The district court denied Olson's many requests for counsel, finding that Olson was a competent pro se litigant and that his claims were not especially complex, and ultimately granted summary judgment against Olson on all counts.

We affirm. We find no abuse of discretion in the court's decision not to recruit counsel for Olson; the district court applied the correct legal standard and properly considered both Olson's ability to represent himself and the complexity of Olson's case. Summary judgment was proper because there is no evidence that Sergeant Schneider was subjectively aware that Russell was dangerous or that Tenebruso failed to act promptly once she learned of Olson's serious medical needs. Because Olson has no evidence to prove deliberate indifference, his claims must fail.

## I. Background

Olson shared a cell with Russell at the Columbia Correctional Institution for about a week in late March 2007. Olson claims that on March 27 he approached Sergeant Schneider and told him: "[M]y celly, Russell, has twice tried to swing off on me and I want him moved … I fear he's gonna try to do it again … he isn't taking his meds and hears voices that tell him

to attack people … he needs his own cell." Sergeant Schneider asked other officers on duty about Russell, but nobody had heard of any problems between Olson and Russell or of any issues with Russell's medication. Nonetheless, Sergeant Schneider asked the officer supervising distribution to be sure Russell took his medication.

The next evening Russell attacked Olson, damaging one of Olson's teeth. The nurse on duty recommended that the tooth be pulled, but apparently nobody scheduled a dental appointment for Olson. Olson alleges that he requested an appointment in several letters that he sent to Tenebruso, the health-services manager, but most of those letters aren't in the record. The earliest letter in the record is an April 8 request for aspirin, which was denied on April 13. Next is an April 14 note from Tenebruso to Olson indicating that she had received several requests from him that day expressing concern about his tooth and directing him to fill out the proper form if he wanted to be seen by a doctor. Olson didn't fill out this form—instead he sent an abrasive response insisting that no other form was needed—but Tenebruso referred him to the dentist anyway on April 16. On April 19 the tooth was removed.

Olson brought this § 1983 lawsuit against Sergeant Schneider and Tenebruso (and a few other prison officials who are not part of this appeal), alleging that they violated the Eighth Amendment by acting with deliberate indifference to the risk of an attack by Russell and to his dental needs. He repeatedly asked the district court to appoint counsel for him, but the magistrate judge assigned to the case refused each request. The first few were denied because Olson failed to

show that he had tried to secure a lawyer on his own; the last request was denied because the judge determined that Olson was sufficiently competent to handle a case of this complexity.

In two separate orders, the judge granted summary judgment against Olson on all counts. The first order found no evidence that Tenebruso was aware that Olson had a serious medical condition or that Tenebruso knew about Olson's dental needs more than a few days before the tooth was pulled. The order also directed the government to provide additional information about Russell's prison records, reasoning that a pro se litigant like Olson might not have known how to get around the government's objections to producing these documents. After reviewing the submissions, the judge concluded that Russell had a clean record in prison and that Sergeant Schneider could not have anticipated the attack, and accordingly entered final judgment against Olson.

## II. Discussion

Olson's primary argument on appeal is that the district court should have recruited counsel to represent him. He also argues that summary judgment was improper because there was sufficient evidence in the record to create a genuine issue about whether Sergeant Schneider and Tenebruso were deliberately indifferent to his needs. Neither contention has merit.

**A. Request For Counsel**

There is no right to court-appointed counsel in federal civil litigation. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). District courts may nonetheless ask lawyers to represent indigent litigants on a volunteer basis. *See* 28 U.S.C. § 1915(e)(1). Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most. This task is necessarily entrusted to the district court's discretion; our job is to ensure that the district court applied the proper legal standards without abusing that discretion. *See Pruitt*, 503 F.3d at 658.

In deciding whether to request counsel, district courts must ask two questions: "(1) [H]as the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id.* at 654. The magistrate judge found the first element satisfied once Olson submitted letters from several attorneys declining to assist him. The parties spend some time quibbling about whether Olson had demonstrated reasonable efforts before that point; we don't need to address that dispute because even after presenting the letters, Olson couldn't satisfy the second part of the test.

To decide the second question—whether Olson appeared competent to litigate the case himself—the judge properly

considered both the complexity of the case and Olson's capabilities. *See id.* at 655. The judge found that the law governing Olson's claims was "straightforward" and that the relevant substantive and procedural rules could be explained to Olson in pretrial conferences and orders. We agree that Olson's claims were not especially complex. The key disputes here were whether Sergeant Schneider knew that Russell was dangerous and whether Tenebruso knew that Olson had a serious medical condition. While some state-of-mind issues may involve subtle questions too complex for pro se litigants, *see Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010), there was nothing subtle about the problem here: Olson had no evidence that the defendants knew about the risk to his safety or the pain in his tooth. Moreover, Olson understood this problem, which is why he made diligent efforts to obtain prison records that might prove the defendants' deliberate indifference. We reject Olson's argument that state-of-mind questions are categorically too difficult for pro se litigants. *See, e.g., Romanelli v. Suliene,* 615 F.3d 847, 852 (7th Cir. 2010) (finding that proving deliberate indifference was not too complex for a pro se litigant).

The judge then concluded that Olson was competent to handle a case of this complexity. Olson didn't have to be as proficient as a seasoned civil-rights attorney; the test is "whether the difficulty of the case—factually and legally— exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt,* 503 F.3d at 655. The judge properly evaluated Olson's abilities by looking at his pleadings and competence in early phases of the litigation, concluding that "[h]is submissions are well

written and he appears capable of following instructions and making intelligible arguments." We agree. Indeed, Olson's submissions to the district court were much better than the average pro se litigant's and compare well to some pleadings filed by licensed attorneys. Olson points out that he suffers from severe depression and adult hyperactivity disorder (among other issues), but he never explains why those conditions would prevent him from coherently presenting his case, and his capable pleadings suggested that he was competent despite his mental-health problems. With the court's instruction, he was able to conduct discovery and even make sophisticated, successful arguments on obscure subjects like exhaustion of remedies. It was not an abuse of discretion to conclude that Olson had the ability to coherently present his claims.

Nonetheless, Olson argues that he couldn't handle this litigation himself because shortly after the attack, he was transferred to a different prison. He told the district court that the transfer "hamper[ed] his ability to obtain declarations, affidavits, and other statements from other Inmates." Many of our cases suggest that a transfer is an important factor to consider in deciding whether to recruit counsel for indigent litigants. *See Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (collecting cases). But Olson hasn't explained why the transfer affected his ability to litigate this case. We doubt that talking to other inmates would have helped him investigate the facts in dispute—issues about the defendants' state of mind—and anyway he made no request for information from inmates at his former institution. What Olson needed was proof that officials believed his warnings and ignored his requests, and fellow inmates weren't likely to give him insight into the minds

of prison officials. Instead, Olson pursued the more promising route: requesting documents in the defendants' possession that would show what the defendants knew and when. Olson didn't have to be at his old institution to file document requests and interrogatories. Moreover, the judge gave him an opportunity to argue that the defendants were withholding documents or other discoverable materials. Olson never responded to this invitation, and he's given us no other reason to believe that the transfer prevented him from effectively presenting his case.

We recognize that imprisonment only exacerbates the already substantial difficulties that all pro se litigants face. But Congress hasn't provided lawyers for indigent prisoners; instead it gave district courts discretion to ask lawyers to volunteer their services in some cases. The district court applied the correct legal standard in deciding whether to recruit a lawyer for Olson, and we find no abuse of discretion.

## B. Summary Judgment

The judge entered summary judgment in favor of Sergeant Schneider and Tenebruso. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Moreover, "a factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). We review the grant of summary judgment de novo, drawing all inferences in the manner most favorable to Olson. *Rosario v. Brawn*, 670 F.3d 816, 820 (7th Cir. 2012).

To succeed on his Eighth Amendment claim against Sergeant Schneider, Olson had to show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that Sergeant Schneider was deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "deliberate indifference" requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This standard comes from the Eighth Amendment itself: Because the Amendment "does not outlaw cruel and unusual 'conditions,'" but only "cruel and unusual 'punishments,'" it can only be violated through deliberate action or inaction—mere negligence is not "punishment." *Id.*

Olson hasn't presented evidence from which a reasonable fact finder could conclude that Sergeant Schneider knew that he faced a substantial risk of serious harm from Russell. He relies primarily on his statement to Sergeant Schneider expressing his fear of Russell and requesting a different cell. But prison guards are neither required nor expected to believe everything inmates tell them. *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004). "[P]risoners may object to potential cellmates in an effort to manipulate assignments, or out of ignorance." *Id.* If Sergeant Schneider didn't believe Olson's warning, then he wasn't deliberately indifferent to any known risk; at most he might have been negligent if he failed to investigate a potential threat.

But in fact Sergeant Schneider *did* investigate the potential threat: He spoke to other guards on duty, who cast doubt on

Olson's warning. Nobody working that shift had heard of any problems between Olson and Russell, and they reported that Russell was taking his medications. Moreover, Russell had no history of violence or conflicts with other inmates. It was logical for Sergeant Schneider to infer that Olson's warning was false, or at least exaggerated; without more evidence we can't see how a reasonable fact finder could conclude that Sergeant Schneider actually drew the opposite inference. *See Lindell v. Houser*, 442 F.3d 1033, 1035 (7th Cir. 2006); *Riccardo*, 375 F.3d at 527.

Olson's claims against Tenebruso founder for similar reasons. Olson had to show that he was experiencing an objectively serious medical need and that Tenebruso was deliberately indifferent to it. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). There's no evidence that Tenebruso ever learned that Olson had a serious medical need. Although Olson claims his broken tooth caused him severe pain and left him unable to sleep or eat until it was removed, his letters to Tenebruso make much milder claims. His earliest letter (on April 8) was a request for aspirin in which Olson suggested that the pain was diminishing. We can't say that a reasonable official would necessarily interpret a request for aspirin as an indicator of serious medical needs. Olson didn't mention his pain at all in the second letter (on April 14); he simply vented his frustration with the prison's procedure for requesting dental appointments. This is hardly evidence from which Tenebruso could have inferred that Olson had a serious medical need, let alone evidence that she *actually drew* that inference.

In his response to the motion for summary judgment, however, Olson claimed that he repeatedly informed Tenebruso about his serious pain. The judge did not consider this argument because Olson failed to submit an affidavit or other evidence to support it, although the court acknowledged that it's an open question in this circuit whether anything more than an unsworn statement is needed to oppose summary judgment. *See Jajeh v. County of Cook*, 678 F.3d 560, 568 & n.4 (7th Cir. 2012). We note that the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form. *See* FED. R. CIV. P. 56(c)(2)–(4).

We do not need to decide whether the judge properly disregarded the unsworn statements in Olson's response because even with them, summary judgment was appropriate. Timing is everything in this case, and yet Olson never told the court *when* he sent the letters to Tenebruso. The record suggests that Tenebruso received several requests from Olson, but all on the same day—April 14, two days before Olson was referred to the dentist. No reasonable fact finder could conclude that this two-day delay reflected deliberate indifference on Tenebruso's part, considering that Olson never filled out the proper request to see a dentist and never indicated that his situation was an emergency. *Cf. McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."). Olson needed evidence that Tenebruso was aware of his urgent needs well before she took action, but

even in his unsworn statements, he doesn't claim that he made a specific request for dental services before April 14.

Summary judgment in favor of Sergeant Schneider and Tenebruso was therefore appropriate.

AFFIRMED.