NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 27, 2014[*]
Decided July 8, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-3290

CARL BARRETT,
    *Plaintiff-Appellant,*

    *v.*

LAVERNE WALLACE, et al.,
    *Defendants-Appellees.*

Appeal from the
United States District Court for the
Western District of Wisconsin.

No. 12-cv-24-bbc

Barbara B. Crabb,
*Judge.*

**O R D E R**

On several occasions Carl Barrett, a Wisconsin inmate, intentionally overdosed on prescribed medications. In this civil-rights suit, Barrett alleges that prison guards used excessive force in removing him from his cell after two of these incidents and that they failed to prevent another. One of Barrett's claims was submitted to a jury, which found for the defendants. In this appeal Barrett argues that the district court abused its discretion in not recruiting a lawyer to assist him. We disagree and affirm the judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

In September 2010, when Barrett was housed at the Wisconsin Secure Program Facility, he swallowed approximately 70 pills, including pain relievers and a prescription sleep aid. During the suicide attempt, a prison psychologist was standing outside his cell trying to persuade him not to take the pills. Several guards, including defendant William Brown, ordered Barrett to leave his cell, and when he refused, they used pepper spray to force compliance with their order. Barrett was then taken to a hospital for treatment. The following month Barrett swallowed another stash of sleeping pills after warning guards, including defendants Laverne Wallace and Shawn Gallinger, that he was suicidal. Barrett had accumulated those pills by pretending to swallow them when medication was administered. Again he was hospitalized. He made a third suicide attempt, much like the first two, in January 2011.

Barrett then brought this lawsuit alleging that Brown used excessive force in removing him from his cell and that Wallace and Gallinger disregarded his suicide threat and pleas for help. Indeed, Barrett alleged, Gallinger goaded him to swallow the pills. The guards' actions, he claimed, violated the Eighth Amendment. He further claimed that the Department of Corrections violated the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12133, by not adequately treating his unspecified mental impairments. (Barrett also raised other claims, none of them relevant to this appeal.) At screening, *see* 28 U.S.C. § 1915A, the district court concluded that Barrett had not stated an ADA claim because he did not allege that he was denied treatment *because of* a disability. The court allowed the Eighth Amendment claims to proceed.

Shortly after filing his complaint, Barrett twice requested that counsel be recruited to assist him. In the first request, he said he needed help understanding the legal issues, presenting evidence at trial, and cross-examining witnesses. He also contended that unspecified mental-health issues would hinder his ability to litigate his case. He submitted a psychiatric report showing that he suffered from a sleep disorder and was possibly depressed but was malingering psychotic symptoms. In denying the motion, the district judge reasoned that Barrett's allegations were "fairly straightforward," that she had explained the law governing his claims and would guide him on court procedures and gathering evidence, that discussing the need for a lawyer at trial was premature, and that Barrett had not shown that his mental-health issues were affecting his ability to litigate.

In his second request, Barrett asserted that counsel was necessary because his "jailhouse lawyer" was too busy to continue helping him. The court reasoned, however, that Barrett still had not shown that mental-health issues were impeding his efforts or

that he could not gather and present evidence himself. The court added that Barrett had been given instructions tailored for pro se litigants.

The defendants then moved for summary judgment. The district court granted the motion in part, concluding that judgment for the defendants was appropriate insofar as Barrett asserted that *any* use of pepper spray was excessive. But because Barrett averred that he was struck with a projectile and subjected to a second burst of pepper spray while unconscious, the court allowed this aspect of his excessive-force claim to proceed. The court also concluded that Barrett had enough evidence for a jury to find that the defendants had ignored his second suicide threat.

Barrett again requested counsel. He said he was "still receiving psychological treatment" and that his jailhouse lawyer could not assist him at trial. The court acknowledged the difficulty in assessing Barrett's capabilities given his reliance on another inmate to prepare his filings, but noted that Barrett still had not shown that his mental health was impeding his ability to litigate. Furthermore, the court reasoned, the lawsuit was not "particularly complex," and Barrett's principal task at trial would be to testify and elicit testimony from inmate witnesses about the incidents.

At trial Barrett's own testimony was his only evidence about the force used during the September 2010 incident. Defendant Brown countered with a videorecording of that cell extraction. Barrett and another inmate testified about the response of Wallace and Gallinger to the plaintiff's October suicide threat. Wallace and Gallinger also testified. The district court granted Brown's motion for judgment as a matter of law on the excessive-force claim, and the jury found for Wallace and Gallinger.

On appeal Barrett makes a single argument: that the district court abused its discretion in not recruiting a lawyer to assist him. He says in his brief that counsel's assistance was needed to litigate his ADA claims and his Eighth Amendment claims arising from the drug overdoses in September and October 2010. Barrett contends that these claims were complex and he was relying on fellow inmates for help, and thus the district court improperly concluded that he could represent himself.

The district court has broad discretion in ruling on requests for pro bono counsel; we will affirm as long as the court applied the appropriate legal standard and thoughtfully examined the difficulty of the case and the plaintiff's ability to litigate it on his own. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). The district judge did that here. She noted that Barrett's claims concerning the drug overdoses were

straightforward and involved elementary factual disputes. She also noted that Barrett had merely asserted—but never shown—that mental-health issues impaired his ability to represent himself. *See Olson v. Morgan*, 750 F.3d 708, 711–12 (7th Cir. 2014) (upholding order denying motion to recruit counsel where plaintiff had not explained why mental-health "conditions would prevent him from coherently presenting his case").

Moreover, it's clear to us that assistance of counsel would not have made a difference here. *See Pruitt*, 503 F.3d at 659 (holding that a denial of a request for pro bono counsel is not reversible unless the plaintiff shows prejudice). Barrett argues that counsel would have found an expert to further his claim of disability discrimination, but that claim—as the district court told him from the beginning—was a nonstarter because Barrett did not assert that he was denied adequate treatment *because* of his mental illness. *See* 29 U.S.C. § 794(a); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).[1]

Nor is it reasonably likely that a lawyer could have bolstered Barrett's contention that the use of pepper spray in September 2010 constituted excessive force. Barrett needed to prove that pepper spray was applied "maliciously and sadistically to cause harm" rather than in a "good-faith effort" to gain his compliance. *See Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *see also Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). The videorecording of the cell extraction confirms that pepper spray was used only because Barrett—who was in need of prompt medical attention after overdosing—refused to leave his cell. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (explaining that mace is appropriately used when "reasonably necessary to . . .

---

[1] To the extent that Barrett sought damages for disability discrimination, the Supreme Court has not resolved whether states have Eleventh Amendment immunity from suits for damages arising from conditions that violate the ADA but not the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006); *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874 (7th Cir. 2006). That said, the Eleventh Amendment was not an obstacle for Barrett because damages are available against the State of Wisconsin under the Rehabilitation Act. *See Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001); *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 72–73 (1992); *Norfleet*, 684 F.3d at 690 (noting that courts should "analyze a litigant's claims and not just the legal theories that he propounds"); *Jaros*, 684 F.3d at 671 (explaining that substantive law governing ADA and Rehabilitation Act is "the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons").

subdue recalcitrant prisoners"); *see also Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (explaining that granting judgment for defendant is appropriate where video discredits plaintiff's version of events). And in his own testimony, Barrett backed away from his allegation that he was struck by a "projectile."

Thus, a finding of malicious intent depended on evidence that Brown knew Barrett to be *unconscious* rather than uncooperative when he delivered the second burst of pepper spray. *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 727 (7th Cir. 2013) (discussing "general proposition" that use of pepper spray on a subdued individual is excessive). There is no evidence suggesting that Brown believed he was unconscious. To the contrary, the video establishes that Barrett uncovered his cell window *after* the first blast of pepper spray and that Brown continued to command him to get up from the floor and approach the cell door, both of which undercut an inference that Brown thought that the first burst of pepper spray had subdued Barrett. We have held that state-of-mind questions are not categorically too difficult for pro se litigants. *Olson*, 750 F.3d at 712. We see no reason why a lawyer would have changed the outcome here.

Finally, it is not reasonably likely that counsel would have made a difference in Barrett's failure-to-protect claim. To convince the jury that Wallace and Gallinger violated the Eighth Amendment by failing to stop him from overdosing, Barrett needed to prove that they were deliberately indifferent to an objectively serious risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). Barrett presented his own testimony, and testimony from a corroborating witness, cross-examined the defendants, and submitted documentary evidence. Faced with the parties' conflicting evidence, however, the jury chose to credit the guards' version of events. Given Barrett's competent performance at trial, he was not prejudiced by the lack of counsel. *See Romanelli v. Suliene*, 615 F.3d 847, 853 (7th Cir. 2010) (holding that refusal to recruit counsel did not prejudice plaintiff who testified on his own behalf, cross-examined witnesses, and introduced exhibits).

**AFFIRMED**.