NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 21, 2014[*]
Decided November 12, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1310

| | |
|---|---|
| RAYMOND STROMINGER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:10-cv-00158-LJM-DKL |
| EARL BROCK, et al., *Defendants-Appellees*. | **Larry J. McKinney**, *Judge*. |

**O R D E R**

Plaintiff Raymond Strominger, an inmate at Wabash Correctional Facility who uses a wheelchair, appeals from the grant of summary judgment against him in this suit asserting violations of the Americans with Disabilities Act, 28 U.S.C. § 12133, the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

Rehabilitation Act, 29 U.S.C. §§ 701–718, and the Eighth Amendment, for which he seeks relief under 42 U.S.C. § 1983. He contends that prison officials failed to provide him with a cell and access to a shower that complied with federal accessibility standards. This case has a complicated procedural history involving a number of defendants, but it is unnecessary for us to dwell on the procedural details because summary judgment was proper on the merits.

Because the appeal comes to us from a grant of summary judgment, we construe the evidence in the light reasonably most favorable to Strominger, giving him the benefit of conflicts in the evidence and reasonable inferences from the evidence. *CTL ex rel. Trebatoski v. Ashland School Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). At all relevant times, Strominger used a wheelchair because of nerve damage to his legs that stemmed from a drug overdose. He describes the problem as numbness and a sensation of pins and needles in his lower legs (the area where a sock would be). He is capable of standing briefly and walking very short distances with a walker. Strominger's deposition testimony also indicates that he weighs over 300 pounds, which is relevant to his objections to the shower chairs that were provided, as discussed below.

Strominger's claims arise from three incidents at the prison. First, in mid-2008 guards found that he was hiding an improvised knife, a "shank," underneath his wheelchair cushion. He was transferred out of his wheelchair-accessible cell to one that was less accessible, confining movement of his wheelchair to the front area, from where he had to transfer to the bed or toilet. On his second night in this new cell, he fell while standing and using the toilet. He injured his back in the fall. Strominger used the emergency button to call for help and was examined by Dr. Talens, who x-rayed his back but found no injury. Strominger says he continues to experience back pain that the medical staff has failed to treat adequately.

The second incident occurred eight days after the cell transfer. Strominger was transferred to the segregation unit where the shower was, in his view, unsafe for him. He was provided a portable, plastic shower chair that he considered unstable and unable to hold his weight. He refused to shower for 34 days until a wall-mounted shower chair was installed. During that time, Strominger was able to wash himself using the sink in his cell.

The third incident occurred a year later, after Strominger beat another inmate to death with the footrest of his wheelchair. He was transferred to another segregation unit and again objected to the shower chair. Another wall-mounted shower chair was

ordered and eventually installed. This time, he did not shower for 133 days, but again could wash himself using the sink in his cell during that time.

The district court granted summary judgment for the defendants—the Indiana Department of Correction and seven prison officials—on Strominger's Eighth Amendment, ADA, and Rehabilitation Act claims for compensatory damages. Regarding the Eighth Amendment claim, the court determined that the defendants' actions in placing Strominger in the less accessible cell did not amount to a denial of life's minimal necessities. He could still move around the cell, only with more difficulty, and there was no evidence that the defendants ignored an excessive risk to his safety. Regarding the arguably unsafe portable shower chairs, the court determined that Strominger had not been denied a shower. There was evidence that he could have sought assistance getting in and out of the chairs, and that he also had access to his cell sink. In any event, the court found, there was no evidence that the defendants were deliberately indifferent to his needs. Regarding the ADA and Rehabilitation Act claims, the court determined that the less accessible cell was "readily accessible" to Strominger, and though the failure to house him continuously in a handicapped cell was "unfortunate," there was no evidence that the placement was anything worse than negligent. The shower claims were less "clear cut," the court acknowledged, but even if a plastic chair did not meet Strominger's needs and the prison should have installed a wall-mounted shower chairs sooner, any delay was at most negligent rather than deliberate indifferent to his genuine needs.

Strominger first argues the district court erred in granting summary judgment on his Eighth Amendment claims concerning his transfer to a less accessible cell and the unsafe shower conditions. He maintains that these officials must have known of his disability (because of notes in his prison file about his limited mobility), and that their disregard of it was deliberate indifference. But as the district court explained, the actions of these defendants were at most negligence, which is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835–39 (1994); *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). Regarding the cell, the evidence does not allow an inference that Strominger was deprived of life's necessities, but only that his mobility and access to the toilet were made a little more difficult on a very temporary basis. See *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012); *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998). Similarly, regarding the shower chairs, the record suggests at most not that he was denied life's necessities but only that he did not receive the level of accommodation that he wished. In both segregation units, officials responded to Strominger's complaints by discussing the issue with him, investigating possible solutions, and eventually installing wall-mounted shower chairs. See *Jaros*, 684

F.3d at 671; *Johnson v. Snyder*, 444 F.3d 579, 585–87 (7th Cir. 2006), *abrogated on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

Strominger also challenges the grant of summary judgment on his ADA and Rehabilitation Act claims. The record is replete, he maintains, with evidence of intentional discrimination. He points first to the prison's decision to transfer him rather than his non-disabled cell-mate to the less-accessible cell, and second to what he describes as the prison's failure to comply with ADA Accessibility Guidelines requiring a wall-mounted shower chair. Neither of Strominger's examples is sufficient to avoid summary judgment. We find no evidence of unlawful animus against the disabled in the prison's disciplinary decision to transfer Strominger, the inmate who had been found concealing the shank, from the cell he shared with another inmate until he could be transferred to the segregation unit. The cell to which Strominger was transferred was not fully accessible, but he was able to move around in it for the brief eight days he was housed there. The applicable federal regulations provided state prison officials with reasonable flexibility in complying with accessibility standards. See 28 C.F.R. § 35.151(c) (1993). Even if Strominger could show a violation of the ADA and/or Rehabilitation Act, he could not recover compensatory damages without showing intentional discrimination. 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a(a)(2) (Rehabilitation Act); *Barnes v. Gorman*, 536 U.S. 181, 184–89 (2002); *CTL ex rel. Trebatoski*, 743 F.3d at 528 n.4. This circuit has yet to decide whether discriminatory animus or deliberate indifference is required to show intentional discrimination. Compare *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262–63 (3d Cir. 2013) (deliberate indifference), with *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 18 (1st Cir. 2006) (discriminatory animus). Mere negligence is insufficient under either standard, though. We agree with the district court that even with the generous view of the evidence required for purposes of summary judgment, the prison's actions rose at worst to the level of negligence. Strominger is not entitled to damages under the Rehabilitation Act or the ADA.

Strominger next challenges the district court's dismissal of his claims against the doctor who saw him after his fall. The court found that those claims were improperly joined to his disability-related claims under Federal Rule of Civil Procedure 20(a)(2). In Strominger's view, the back injury after his fall stems from the same transaction or occurrence as the events at the heart of this suit, namely, his placement in the less accessible cell and his fall after the transfer. District courts are accorded substantial discretion in matters of joinder, and the court here did not abuse its discretion by finding that the claim against the doctor dealt with the separate facts of Strominger's post-fall medical treatment rather than wheelchair accommodations within the jail. See

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001).

Strominger finally argues that the district court wrongly declined to recruit counsel—first at the complaint stage, when he filled out only a standard prison form that could not have provided enough information to reflect his competence to litigate on his own, as well as at later stages when the court repeatedly denied his requests with little explanation. The district court did not abuse its discretion in denying any of these requests. At each stage of the litigation, the court determined that Strominger was familiar with the factual circumstances surrounding his claims and could follow court procedures and submit adequate filings. See *Henderson v. Ghosh*, 755 F.3d 559, 564–66 (7th Cir. 2014); *Olson*, 750 F.3d at 711–12; *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Although deliberate-indifference cases can raise complex state-of-mind issues that may be difficult for pro se litigants, see *Olson*, 750 F.3d at 711–12; *Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010), Strominger's case did not present this degree of complexity. *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (denying request for counsel in deliberate indifference case was not abuse of discretion because plaintiff simply needed to show defendants consciously disregarded a serious need).

AFFIRMED.