**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2016[*]
Decided March 18, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-1191

| | |
|---|---|
| SHAWN L. STAFFORD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 12-2253 |
| | |
| PAUL TALBOT and MARY MILLER, | Harold A. Baker, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

Shawn Stafford, an Illinois prisoner, sued a doctor and the healthcare administrator at Danville Correctional Center for violating the Eighth Amendment by ignoring his back pain in 2010 and 2011. See 42 U.S.C. § 1983. The district court granted summary judgment for both defendants. Because the claim against the administrator was unexhausted and the doctor did not recklessly disregard Stafford's pain, we affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Stafford has received treatment for back pain since 2000, three years before he began to serve his Illinois sentence. Soon after he arrived at Danville in 2003, prison doctors prescribed him 600 mg tablets of ibuprofen (over-the-counter strength is 200 mg). He remained on that prescription for six years. In November 2009, the prescription was interrupted briefly when Dr. Paul Talbot, a prison physician, declined to renew it. A few weeks later a different prison employee wrote Stafford a new prescription for the drug, and that prescription lasted another year. When it expired in December 2010, Stafford again saw Dr. Talbot and requested its renewal. Dr. Talbot examined him and wrote a two-week prescription. After the two-week supply ran out, Stafford did not seek a further renewal.

During the exam with Dr. Talbot in December 2010, Stafford also asked him to prescribe a shampoo to treat dermatitis. Dr. Talbot denied this request and advised Stafford to buy dandruff shampoo from the prison commissary. A few days later Stafford complained about this denial in a letter to Mary Miller, the healthcare administrator. Miller did not reply.

Two months after the exam with Dr. Talbot, Stafford filed a grievance about the shampoo. The "main thrust" of his grievance, Stafford wrote, "is directed toward Dr. Talbot" for denying his request for prescription shampoo. He also criticized Miller, but only for not replying to his request that she intervene and provide him the shampoo. A grievance counselor responded to Stafford's grievance and scheduled an appointment with a physician's assistant in early 2011. The assistant evaluated Stafford, prescribed shampoo for the dermatitis, authorized Naproxen and Neurontin for Stafford's back pain, and ordered an x-ray of Stafford's lower back. Stafford also saw Dr. Talbot in August and November 2011. Dr. Talbot continued Stafford's prescriptions for Naproxen and dandruff shampoo, but he ended the Neurontin prescription in November 2011.

After Stafford grieved Dr. Talbot's decisions not to renew his limited prescription for ibuprofen in 2010 and to halt Neurontin in 2011, he sued Dr. Talbot and Miller for deliberate indifference to his back pain in 2010 and 2011. Dr. Talbot, Stafford claimed, had recklessly disregarded his pain in two ways: He "refused" to renew the ibuprofen prescription in December 2010, and he abruptly rather than gradually stopped Neurontin in November 2011. And Miller, Stafford added, had failed to intervene and restore the ibuprofen and Neurontin at those times.

At the outset of the case, Stafford asked for counsel. He supplied letters from attorneys who had declined to take his case, and he argued that he needed one to "subpoena" information, conduct internet research, and obtain an expert. The court

denied the request for two reasons. It observed (incorrectly) that Stafford had not attempted to find counsel. But the court reasonably added that "it is too early in the case" to decide whether a lawyer would make a difference. A year later the court notified the parties that the "case is entering in the discovery phase, which means that each party should be seeking admissible evidence to support the party's claims or defenses." The court warned Stafford that discovery "can be difficult." Stafford did not, however, renew his request for counsel.

The district court granted summary judgment for both defendants. The court found that Stafford had not exhausted administrative remedies on his claim that Miller did not intervene to provide him pain relief. It also determined, after discovery, that a rational jury could not find Dr. Talbot liable. He was not deliberately indifferent to Stafford's asserted need for ibuprofen in December 2010 because, the court observed, Stafford did not seek pain relief from him after his prescription ran out then. And Stafford produced no evidence to support his claim that, by abruptly halting the Neurontin rather than weaning Stafford off it, Dr. Talbot acted recklessly in 2011.

In this court Stafford challenges the grant of summary judgment to Miller, raising two unavailing arguments. First he argues that the district court allowed Miller to file a summary-judgment motion that did not comply with the court's Local Rule 7.1. Although Miller failed to include with her original filing some materials arguably required by that rule, the court's decision to allow her to supplement her filing to achieve compliance, at no prejudice to Stafford, was a valid exercise of discretion. *See Modrowski v. Pigatto,* 712 F.3d 1166, 1169 (7th Cir. 2013); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

Stafford also questions the exhaustion ruling, but it is correct. The only grievance that even mentions Miller is, in Stafford's words, "directed toward Dr. Talbot" and focuses on his denial of prescription shampoo. It does not claim an unmet request for pain relief in 2010 or 2011, which is the subject of his claims against Miller. Thus the district court correctly concluded that Stafford has not exhausted his claim against Miller. See 20 Ill. Admin. Code § 504.810(b) (requiring grievances to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint"); *Riccardo v. Rausch*, 375 F.3d 521, 523–524 (7th Cir. 2004).

Stafford next challenges the grant of summary judgment to Dr. Talbot. He argues first that Dr. Talbot ignored Stafford's back pain because he "refused" to renew Stafford's ibuprofen prescription in December 2010. But Dr. Talbot did not "refuse" a

refill request then. He prescribed a two-week package of ibuprofen in December, and Stafford never asked Dr. Talbot to renew it. Stafford replies that the limited supply was recklessly deficient. But he admitted in his February 2011 grievance that he uses ibuprofen rarely—only "when the pain is unbearable"— because a physician's assistant warned him about the "hazard of long-term, high-dose ibuprofen use." Dr. Talbot cannot be deliberately indifferent to Stafford's desire for more pain pills if he did not ask for more when his prescription ran out. See *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Stafford also says that the district court erroneously rejected his claim that Dr. Talbot recklessly halted Neurontin abruptly, rather than tapering him off it, and thereby damaged his nerve tissue and caused him pain. But Stafford offered no evidence that abrupt withdrawal from Neurontin can create these side effects. Without that evidence, Stafford presented no triable issue that Dr. Talbot departed unconstitutionally far from accepted medical standards. See *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Finally Stafford argues that the district court should have recruited counsel to help him gather evidence. Courts have discretion to recruit counsel for an indigent plaintiff when the case appears too complex for the plaintiff to litigate competently, 28 U.S.C. § 1915(e)(1); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). But Stafford asked for counsel near the start of the suit, before the need for discovery was apparent. The denial then was not unreasonable. See *Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010). When the court later notified Stafford that the case was entering discovery, which it explained requires "evidence" and can be "difficult," Stafford did not renew his request. A court is not required to review spontaneously its earlier ruling denying counsel; a litigant may reasonably be required to revive the request. See *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013) (explaining that district court is not required to "spontaneously revisit" earlier ruling); *Pruitt*, 503 F.3d at 659 (concluding that district court can "revisit *sua sponte* a previous denial of pro bono counsel" but adding that court is not required to do so). Because Stafford did not renew his request after the need for evidence was established, any failure to recruit counsel for him was not an abuse of discretion.

Stafford's motion for case disposition is denied as moot.

AFFIRMED.