NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2019[*]
Decided January 8, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1272

STEVEN D. SCOTT,
    *Plaintiff-Appellant,*

    *v.*

JAMES RICHTER, et al.,
    *Defendants-Appellees.*

Appeal from the United States District
Court for the Eastern District
of Wisconsin.

No. 14-cv-864-pp

Pamela Pepper,
*Judge.*

## O R D E R

Steven Scott, a Wisconsin inmate, sued a prison doctor, an optometrist, and the manager of the prison's Health Services Unit for alleged medical malpractice and violations of the Eighth Amendment through their deliberate indifference to his "scalp pain and hair loss," his serious eye condition, and his nerve, muscle, neck, and lower-back pain. Scott moved four times for the district court to recruit counsel to represent

---

[*] We have agreed to decide the case without oral argument because the appellate briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

him. The district judge denied the first three motions after finding each time that Scott was able to litigate his own case. Months after the close of briefing on the defendants' motions for summary judgment, Scott filed his fourth motion for counsel. Ultimately, the judge entered summary judgment for the defendants and at the same time denied Scott's motion as "moot." This appeal concerns only the district judge's denials of Scott's motions for counsel. We see no abuse of discretion and therefore affirm.

Scott alleged in his complaint that Dr. Richard Heidorn, the prison's physician, and Jeananne Greenwood, the prison's health services manager, ignored for years his persistent pain, scalp lumps, and "excessive hair loss" resulting from acne keloidalis nuchae. He complained that Dr. Heidorn's treatment method—special shampoos, instead of surgery or freezing the keloids—did not produce "sufficient improvement" for his pain. Scott also claimed that Dr. Heidorn and Greenwood recklessly disregarded his requests for an MRI to address "constant pain" in his neck, back, and muscles from a pinched nerve. Scott also asserted that Dr. James Richter, an optometrist, failed to treat his migraines or diagnose Scott's anterior uveitis, an inflammatory eye condition that an ophthalmologist discovered months later and treated. Scott further faulted Dr. Heidorn and Greenwood for disregarding a doctor's recommendation that he see a rheumatologist. Scott alleged that "the entire time" that he had complained of unrelenting pain and other symptoms, he had been suffering from lupus.

After prevailing on Richter's motion to dismiss, Scott filed his first motion for recruited counsel on March 8, 2016. Scott stated that he had contacted five attorneys who declined to represent him and that his blurred vision made it difficult to prosecute his case. The judge denied the motion on March 23, finding that Scott was competent to litigate the case himself. Scott had submitted a "clear and concise response" to Richter's motion to dismiss, "cited appropriate case law, and applied the facts of his case to the law." The judge added that Scott's blurred vision had not stopped him from filing "understandable pleadings."

Two days later, Scott moved again for counsel. He reiterated that his blurred vision impaired his ability to litigate the case and that he needed an attorney to help him find an expert to explain his eye condition. After not receiving a ruling by May, Scott filed a "motion for reconsideration" of his need for recruited counsel. Scott argued that counsel was "necessary" because he required an expert witness to support his claim. The judge denied both motions, finding that Scott's "blurred vision has not interfered with his ability to file motions, pleadings, and briefs to date." And Scott did not contend that he is otherwise incompetent to litigate, the judge noted, only that an

attorney would be better able to find an expert witness. Scott's motion to reconsider failed too, the judge said, because he did not demonstrate any manifest error of law or fact in the denial of his first motion for counsel.

Discovery continued, and on August 12, 2016, Scott moved a third time for recruited counsel. He argued that the case had become too complex for him to litigate because he did not know how to depose the defendants. The terminology in the medical treatises was "beyond the scope for a lay person to understand," he said, so he "d[id] not understand what he [wa]s doing." The judge again denied Scott's motion, observing that Scott had served interrogatories and requests for production of documents "seeking information that is relevant to his Eighth Amendment claim." The judge added that Scott might not need to depose anyone after he received discovery. And though the ability to understand medical terms might become necessary, "that time has not yet come at this stage." Moreover, the judge thought, Scott had continued to demonstrate his competence to represent himself "based on what the court has observed thus far."

The defendants filed two motions for summary judgment on October 6, 2016, and Scott responded substantively on October 31. Briefing wrapped up in November with the filing of the defendants' reply briefs and Scott's "declaration" in response to them (a sur-reply). Five months passed, and then Scott filed his fourth motion for recruitment of counsel on April 24, 2017. Scott asserted that he was unable to gather evidence necessary to contest the defendants' motions for summary judgment effectively. He required expert witnesses, he explained, whom he could not find on his own. Scott also averred that he suffered from serious mental illnesses that impaired his ability to litigate and that a fellow inmate had been assisting him earlier.

The district judge granted the defendants' motions for summary judgment on January 29, 2018, without having ruled on the fourth motion for recruitment of counsel in the intervening months. The judge primarily concluded that Scott lacked sufficient evidence that the defendants acted with deliberate indifference when they made the challenged decisions. Further, (as Scott had predicted) the medical malpractice claim against Dr. Richter failed because Scott did not submit expert testimony to demonstrate the applicable standard of care. Without addressing its merits, the judge denied Scott's fourth motion for counsel as "moot" when she entered judgment for the defendants.

Scott argues on appeal that the district judge should have recruited counsel to represent him. Litigants have no right to appointed counsel in federal civil litigation,

*see Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but district courts may ask an attorney to represent any person unable to afford counsel, see 28 U.S.C. § 1915(e)(l). To determine whether to recruit counsel, district courts must ask: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and, if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Olson*, 750 F.3d at 711 (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*)). No one has disputed that Scott met the first requirement by showing that he contacted five attorneys who would not take the case.

Nonetheless, we see no abuse of discretion with respect to the denials of Scott's first three motions for attorney representation and his motion to reconsider because the district judge properly assessed the complexity of the case together with Scott's capabilities. See *Olson*, 750 F.3d at 711. In response to Scott's first three motions, the judge applied the correct inquiry, evaluating whether Scott was competent to litigate the case given its difficulty. See *Pruitt*, 503 F.3d at 654. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id*. at 655. The judge addressed the particular challenges at hand—the defendants' motion to dismiss, the need for a medical expert, Scott's blurred vision, his need to depose witnesses, and his understanding of medical terminology—and reasonably determined that Scott's litigation performance up to that point demonstrated his competence. See *Romanelli v. Suliene*, 615 F.3d 847, 853 (7th Cir. 2010). Scott also demonstrated that he was able to manage discovery, to a point: he issued interrogatories and requests for admission that were relevant to the facts of his case. See *Zarnes v. Rhodes*, 64 F.3d 285, 289 (7th Cir. 1995). Although Scott likely would have benefitted from recruited counsel, that is not the proper inquiry in assessing the difficulty of the case or his relative competence. See *Pruitt*, 503 F.3d at 655.

The more difficult question relates to the judge's denial of Scott's fourth motion for counsel. In the abstract, Scott was correct to flag his need for an expert witness, at least for the medical malpractice claim and in this case possibly also for the Eighth Amendment claim. But the district court had left the door open to a later motion for counsel's assistance in this respect if the case progressed to the point at which the need for an expert had crystallized. In denying Scott's third motion for counsel, the judge had said that Scott might need assistance understanding the medical dimension of his case, but "that time has not yet come at this stage." But Scott dropped the ball. He did not file his fourth motion—the critical one because it responded to the defendants' showing on summary judgment—until five months after the summary-judgment briefing had

ended. Before then, the judge had no obligation spontaneously to revisit her earlier rulings. See *Bracey v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). Instead of moving for counsel at the close of discovery, Scott contested summary judgment on the merits and waited for months after briefing ended. If Scott believed that he was incapable of effectively responding to defendants' summary-judgment motions, he should have renewed his motion for counsel when he received them. See *id*. Or he could have moved for an order under Federal Rule of Civil Procedure 56(d) based on his inability to "present facts essential to justify [his] opposition," which was the crux of the fourth motion (despite his already having responded substantively). He did neither until months had passed. The district court was within its discretion to regard this as an untimely effort and to deny it.

It is true, as Scott contends, that Eighth Amendment and medical malpractice claims can pose particular challenges to *pro se* litigants for reasons including the need to produce medical evidence and obtain expert testimony. See *Nally v. Ghosh*, 799 F.3d 768, 785 (7th Cir. 2015); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005). But Scott seems to argue that cases like his are always too complex, factually and legally, for *pro se* litigants—a proposition we have rejected. *Olson*, 750 F.3d at 712. Scott's case involved multiple medical conditions spanning years, see *Greeno*, 414 F.3d at 658, and he might well have needed a medical expert to support some parts of his claim (as the district judge's ruling on the medical-malpractice claim suggests). But we reiterate that the time for Scott to argue his case's factual and legal complexity was before responding to the motions for summary judgment. It was then that Scott had all the evidence and saw what he was up against to establish his claims. His decision to respond substantively to the motions signaled that he believed he had enough information. Therefore, the district judge did not abuse her discretion in addressing the merits of the summary-judgment motions and denying the later-filed fourth request for counsel.

AFFIRMED