NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2020[*]
Decided January 28, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-1778

| | |
|---|---|
| JOVAN WILLIAMS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:17-cv-452-jdp |
| JOSE REYES, *Defendant-Appellee*. | **James D. Peterson**, *Chief Judge*. |

**O R D E R**

Jovan Williams, a Wisconsin prisoner, sued a correctional officer under the Eighth Amendment for failing to prevent his attempted suicide. A jury found in favor of the officer. On appeal, Williams challenges only the district court's denial of his request for recruited counsel to represent him at trial. The district court determined that the case presented a straightforward question that Williams appeared competent to

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

litigate by himself. In light of all the relevant circumstances, we find no abuse of discretion and therefore affirm.

Williams was under observation in the restricted housing unit at the Green Bay Correctional Institution because he presented a risk of self-harm. On June 28, 2017, he attempted to take his own life by suffocating himself with a plastic bag. Correctional officers intervened, and after a nurse assessed him, he was returned to his cell. Williams maintains that at the time, he experienced physical effects (such as headaches and dizziness), and that he continues to suffer psychologically from the trauma.

The parties dispute where Williams got the plastic bag. Williams has sworn that correctional officer Jose Reyes gave it to him the day before his suicide attempt. According to Williams, Reyes delivered Williams's lunch—nutraloaf—wrapped in a plastic bag. Williams says that he told Reyes he would use the plastic bag to harm himself and that Reyes responded: "If you want to harm yourself with the plastic bag, then go ahead and have fun with it." Although Reyes initially admitted delivering lunch to Williams, he denied it was in a plastic bag. Nutraloaf is generally served wrapped in paper. Reyes denied, before and at the trial, that Williams ever showed him a plastic bag or said that he would use it to harm himself.

In his complaint under 42 U.S.C. § 1983, Williams alleged that Reyes displayed deliberate indifference to a substantial risk of serious harm by giving him a plastic bag and making no effort to retrieve it after hearing that he planned to harm himself. Several months after filing his complaint, Williams requested recruited counsel. He explained that a jailhouse lawyer had prepared all his submissions. He cited his lack of litigation experience, his limited education, and his limited access to the law library given his housing placement. The complexity of the case was beyond his capabilities, he argued, because his depression impaired his ability to think critically.

After concluding that Williams had made reasonable efforts to secure private counsel, the district court denied his motion. The court recognized Williams's mental-health problems, lack of legal experience, and limited law library access. The court reasoned, however, that it was "too early to tell" how these problems would affect Williams's ability to litigate his case. The court noted that Williams's submissions, "although aided by another inmate, have been easy to understand."

Reyes moved for summary judgment. Williams, who had been transferred to another prison by that point, filed an extensive response drafted by another inmate,

along with another motion for recruited counsel. Williams asked the court to recruit counsel for him if the court denied the motion for summary judgment.

The district court denied the summary judgment motion upon concluding that there were material factual disputes about where the plastic bag came from, whether Reyes knew about it, and whether Reyes had heard and disregarded a threat of self-harm. At the same time, the court denied Williams's request to recruit him counsel for trial. The court emphasized that Williams's deliberate indifference claim against a single defendant was "relatively simple" when compared to many cases brought by pro se litigants. It recognized that Williams was mentally ill and had received the assistance of other inmates to litigate his case. The court, however, reasoned that Williams had not "submitted anything suggesting that he will be unable to tell his version of events at trial," which would be his "primary responsibility." The court recognized that although Williams would face challenges in "prepar[ing] opening and closing statements, develop[ing] direct lines of questioning, or cross-examin[ing] witnesses," these were the "same challenges facing all pro se litigants." The court noted that more than 300 pro se cases are filed each year in the district and that the court is generally able to recruit only around 20 volunteer lawyers per year. Trial was later set for April 1, 2019.

The district court entered a lengthy trial preparation order on January 19, instructing the parties on trial procedure, evidentiary rules, and subpoenaing witnesses, among other things. According to Williams, he did not "understand any of the content" of the trial preparation order. In his multiple motions for recruited counsel, he restated his mental-health concerns and emphasized that because of his communication difficulties, he would have trouble performing cross-examinations or explaining the events of his claim to a crowd of people. Further, he emphasized that since his placement on clinical observation status after an overdose, he no longer had his legal file, which included his copy of the court's trial procedures.

The district court denied each motion, concluding that given the relative simplicity of Williams's case and "in light of [his] abilities," Williams would be able to try the case on his own. His primary responsibility at trial, the court reiterated, would be to tell the jury his version of events. On one occasion, the court listed the events and facts Williams should recite at trial, instructing him to prepare by reviewing the summary judgment decision and the trial preparation order. Concerned about Williams's lack of access to his legal file and that he had missed the deadlines to file witness and exhibit lists, the court attempted to accommodate Williams's challenges,

saying that if Williams could think of specific documents from the record he wanted as exhibits, the court would provide him with copies.

At trial, Williams managed to deliver opening and closing statements, although his cross-examination questions were often difficult to follow. As a result, the court at times interceded and asked questions for Williams or interrupted witnesses who failed to answer his questions. While cross-examining Reyes, Williams said that he was about to have a "mental breakdown," so the court paused the trial until the next morning. Despite Williams's missteps, the court told him during a sidebar that he had performed admirably for a pro se prisoner: he was able to strike a juror, exclude a witness, and impeach the defendant (on his testimony that another guard handed Williams his lunch). The jury returned a verdict for defendant Reyes.

On appeal, Williams argues that the district court erred by denying his five motions to recruit counsel. He says that the court should have recruited counsel because he did not understand the issue of deliberate indifference; nearly all of the evidence was disputed; he was unfamiliar with legal proceedings or rules of evidence; he could not access key witnesses and documents; and he had to question Reyes, who had allegedly encouraged him to attempt suicide.

Federal civil litigants have no right to court-appointed counsel. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), citing *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). An indigent civil litigant may ask a district court to recruit a volunteer lawyer to represent him or her. See 28 U.S.C. § 1915(e)(1). We review a district court's denial of that request for abuse of discretion. See *Olson*, 750 F.3d at 711–12; *Pruitt*, 503 F.3d at 658. As with any discretionary determination, our review is deferential. See *Pruitt*, 503 F.3d at 649, 658. We ask whether the district court applied the proper legal standard and arrived at a reasonable conclusion using facts in the record. *Id.* at 658.

In deciding whether to recruit counsel, the district court must ask: "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Olson*, F.3d at 711, citing *Pruitt*, 503 F.3d at 654. No one disputes that Williams cleared the threshold hurdle by making reasonable attempts to find counsel on his own. *Pruitt*, 503 F.3d at 654. At the second step, a court must consider the plaintiff's "capacity as a layperson to coherently present [his case] to the judge or jury himself." *Olson*, 750 F.3d at 711, citing *Pruitt*, 503 F.3d at 655.

Given this legal standard, we see no abuse of discretion here. The district court's inquiry was quite specific to the particular case. The court focused on the nature of the

upcoming trial, assessed its difficulty, and weighed it against Williams's ability to litigate the case himself. *Olson*, 750 F.3d at 711, citing *Pruitt*, 503 F.3d at 654. Here, the court accurately identified the issue for trial as "relatively simple." It would hinge on whether Reyes in fact gave Williams a plastic bag, heard the threat of suicide, and told Williams to "have fun with it." That question depended on the credibility of the parties. The jury would not require expert testimony or documentary exhibits to decide whom to believe. The relevant substantive and procedural rules could be, and were, explained to Williams in pretrial conferences and trial preparation orders. See *Olson*, 750 F.3d at 711. Further, the court took note of Williams's mental illness and reliance on the assistance of other inmates before it concluded that Williams "has not submitted anything suggesting that he will be unable to tell his version of events at trial"—his "primary responsibility."

The district court did not ignore the difficulty of trying Williams's claims before a jury. See *Walker v. Price*, 900 F.3d 933, 938–39 (7th Cir. 2018). Rather, in this instance, the district court made a conscientious effort to protect Williams from unfair disadvantages and to provide appropriate guidance both before and during trial. Before trial, the court enumerated the facts Williams should recount and the documents Williams should review in preparation for trial. The court also accommodated Williams's lack of access to his legal file. This guidance continued during trial. For example, at one point, when Reyes did not directly answer Williams's question, the court interceded on Williams's behalf and repeated his question. At another time, when Williams asked Reyes a compound question, the court explained to Williams that he should deliver his questions separately. Further, the court was cognizant of Williams's mental-health problems; when Williams told the court that he was about to have a "mental breakdown" while cross-examining Reyes, the court put the trial on hold until the next morning. The court even included, upon Williams's request, a jury instruction emphasizing that temporary loss of consciousness would constitute physical injury.

Finally, in light of the scarcity of volunteer lawyers, the district court was entitled to view the needs of pro se litigants in the district as a whole and to exercise its discretion to determine which cases warranted the outlay of judicial resources in attempting to recruit counsel. See *Olson*, 750 F.3d at 711. As the district court recognized here, almost any pro se litigant would be better off with a lawyer, but that reality is not sufficient to require the court to try to recruit one. In this case, the district court was entitled to conclude that, given the simplicity of Williams's case "among a sea of people lacking counsel," *id.*, it need not recruit counsel for Williams. The judgment is AFFIRMED.