In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1511

LAURIE A. BEBO,

*Plaintiff-Appellant,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-C-3 — **Rudolph T. Randa**, *Judge.*

ARGUED JUNE 4, 2015 — DECIDED AUGUST 24, 2015

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Laurie Bebo is the re-
spondent in a pending administrative enforcement proceed-
ing before the Securities and Exchange Commission. The
administrative law judge assigned to the case is expected to
issue an initial decision within the coming months. If the de-
cision is adverse to Bebo, she will have the right to file a peti-
tion for review with the SEC. The SEC will then have the
power either to adopt the ALJ's initial decision as the final

decision of the agency or to grant the petition and conduct *de novo* review. If the SEC's final decision is adverse, Bebo will then have the right under 15 U.S.C. § 78y(a)(1) to seek judicial review either in this circuit or in the United States Court of Appeals for the District of Columbia Circuit.

Rather than wait for a final decision in the administrative enforcement proceeding and pursue review in the court of appeals, Bebo filed suit in federal district court challenging on constitutional grounds the authority of the SEC to conduct the proceeding. She invoked the district court's federal question jurisdiction under 28 U.S.C. § 1331. The district court granted the SEC's motion to dismiss for lack of subject matter jurisdiction, holding that the administrative review scheme established by Congress stripped it of jurisdiction to hear this type of challenge.

We affirm. It is "fairly discernible" from the statute that Congress intended plaintiffs in Bebo's position "to proceed exclusively through the statutory review scheme" set forth in 15 U.S.C. § 78y. See *Elgin v. Dep't of Treasury*, 567 U.S. —, 132 S. Ct. 2126, 2132–33 (2012). Although § 78y is not "an exclusive route to review" for all types of constitutional challenges, the relevant factors identified by the Court in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 489 (2010), do not adequately support Bebo's attempt to skip the administrative and judicial review process here. Although Bebo's suit can reasonably be characterized as "wholly collateral" to the statute's review provisions and outside the scope of the agency's expertise, a finding of preclusion does not foreclose all meaningful judicial review. If aggrieved by the SEC's final decision, Bebo will be able to raise her constitutional claims in this circuit or in the D.C.

Circuit. Both courts are fully capable of addressing her claims. And because she is already a respondent in a pending administrative proceeding, she would not have to "'bet the farm … by taking the violative action' before 'testing the validity of the law.'" *Id.* at 490, quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). Unlike the plaintiffs in *Free Enterprise Fund*, Bebo can find meaningful review of her claims under § 78y. As a result, she must pursue judicial review in the manner prescribed by the statute.

I.   *Factual and Procedural Background*

In December 2014 the SEC brought an administrative cease-and-desist proceeding against plaintiff Laurie Bebo. The order alleges that Bebo, the former CEO of Assisted Living Concepts, Inc., violated federal securities laws by manipulating internal books and records, making false representations to auditors, and making false disclosures to the SEC. Bebo's answer in the administrative enforcement proceeding asserts as affirmative defenses the same constitutional claims, discussed below, that she asserts in this lawsuit.

The SEC designated an administrative law judge to conduct the proceeding. See 17 C.F.R. § 201.110. The hearing took place over several weeks and was scheduled to conclude by June 19, 2015. As far as we know, the ALJ has not yet issued an initial decision. See *id.*, § 201.360.

If the ALJ issues an initial decision adverse to Bebo, she may file with the SEC a petition to review the ALJ's decision. See *id.*, § 201.410(a). The SEC could then adopt the ALJ's decision as the final decision of the agency or grant the petition and conduct *de novo* review. See *id.*, §§ 201.411(a)–(c),

201.452. Either way, if Bebo is aggrieved by the SEC's final decision, she will have the right to seek judicial review in this court or in the D.C. Circuit. See 15 U.S.C. § 78y(a)(1). Upon filing the record in the court of appeals, the court's jurisdiction would become "exclusive," and it would have the power to "affirm or modify and enforce or to set aside the order in whole or in part." *Id.*, § 78y(a)(3).

Rather than wait for the administrative process to end and pursue judicial review as prescribed by § 78y, Bebo filed suit in a federal district court alleging that the SEC lacks the constitutional authority to continue the administrative proceeding because certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376, 1862–65 (2010) ("Dodd-Frank"), are unconstitutional.

Prior to Dodd-Frank, if the SEC sought a monetary penalty against a non-regulated individual like Bebo, it had to file suit in federal district court. Section 929P(a) of Dodd-Frank changed this by giving the SEC a choice of forums: it can either proceed in federal district court or conduct its own administrative enforcement proceeding. See 15 U.S.C. § 78u-2.

The SEC's choice of forum has procedural consequences. Administrative enforcement proceedings are governed by the SEC's Rules of Practice, not the Federal Rules of Evidence and Civil Procedure. Accordingly, the respondent in an administrative enforcement proceeding has fewer rights to discovery than she would if the SEC had filed suit in district court. She also has no right to a jury trial before the SEC.

Bebo contends that § 929P(a) of Dodd-Frank is facially unconstitutional under the Fifth Amendment because it provides the SEC "unguided" authority to choose which respondents will and which will not receive the procedural protections of a federal district court, in violation of equal protection and due process guarantees. She also contends that the SEC's administrative proceedings are unconstitutional under Article II because the ALJs who preside over SEC enforcement proceedings are protected from removal by multiple layers of for-cause protection. This set-up violates Article II, Bebo argues, because it interferes with the President's obligation to ensure the faithful execution of the laws. Cf. *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 483–84 (2010) (dual for-cause limitations on removal of members of special oversight board unconstitutional under Article II).

The district court dismissed the case for lack of subject matter jurisdiction. *Bebo v. SEC*, No. 15-C-3, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015). That decision was based on legal determinations rather than factual ones, so we review that decision *de novo*. E.g., *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014).

II. *Analysis*

The statutory issue here is a jurisdictional one: whether the statutory judicial review process under 15 U.S.C. § 78y bars district court jurisdiction over a constitutional challenge to the SEC's authority when the plaintiff is the respondent in a pending enforcement proceeding. Where the statutory review scheme does not foreclose all judicial review but merely directs that judicial review occur in a particular forum, as in this case, the appropriate inquiry is whether it is "fairly

discernible" from the statute that Congress intended the plaintiff "to proceed exclusively through the statutory review scheme." *Elgin v. Dep't of Treasury*, 567 U.S. —, 132 S. Ct. 2126, 2132–33 (2012).1

This inquiry is claim-specific. To find congressional intent to limit district court jurisdiction, we must conclude that the claims at issue "are of the type Congress intended to be reviewed within th[e] statutory structure." *Free Enterprise Fund*, 561 U.S. at 489, quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994). We examine the statute's text, structure, and purpose. *Elgin*, 132 S. Ct. at 2133; see also *Thunder Basin Coal*, 510 U.S. at 207.

The Supreme Court has already considered whether Congress, by establishing a judicial review process in § 78y, intended to foreclose judicial review in the district courts for all types of claims involving the SEC. In *Free Enterprise Fund* the Court held that § 78y does not strip district courts of jurisdiction to hear at least certain types of constitutional claims. 561 U.S. at 489–91. Our focus in this appeal is whether Bebo's case is sufficiently similar to *Free Enterprise Fund* to allow her to bypass the ALJ and judicial review under § 78y. Based on the Supreme Court's further guidance in *Elgin*, we believe the answer is no.

---

[1] The inquiry is different when Congress has enacted a statute purporting to deny all judicial review for constitutional claims. Then a "heightened standard" applies, requiring a clear statement from Congress that it intended to foreclose judicial review in any forum. See *Elgin*, 132 S. Ct. at 2132, discussing *Webster v. Doe*, 486 U.S. 592 (1988), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

The *Free Enterprise Fund* plaintiffs were an accounting firm and a nonprofit organization of which the firm was a member. Unlike Bebo, neither plaintiff was subject to a pending enforcement action when they filed their complaint. They brought suit in district court challenging the constitutionality of the Sarbanes-Oxley Act of 2002 provisions establishing a special oversight board whose members were appointed by the SEC. The special oversight board had the powers to inspect registered accounting firms, to initiate formal investigations, and to impose sanctions in disciplinary proceedings. The board had inspected the plaintiff accounting firm, released a report critical of the firm's accounting practices, and then launched a formal investigation. Before the investigation was complete, the plaintiffs sued the board and its members alleging that the statute was unconstitutional under Article II because it conferred executive power on board members without subjecting them to Presidential control.

Before reaching the merits, the Court rejected the board's argument that § 78y provided an exclusive system for judicial review of the plaintiffs' claims. Applying the standard established in *Thunder Basin Coal*, the Court explained that it would not presume that Congress intended to strip district courts of jurisdiction where (1) "a finding of preclusion could foreclose all meaningful judicial review," (2) the suit was "wholly collateral to a statute's review provisions," and (3) the plaintiffs' claims were "outside the agency's expertise." *Free Enterprise Fund*, 561 U.S. at 489 (internal quotation marks omitted), citing *Thunder Basin Coal*, 510 U.S. at 212–13. The Court concluded that all three factors weighed in favor of finding jurisdiction in *Free Enterprise Fund*.

First, the Court explained, the plaintiffs would not be able to receive meaningful judicial review without access to the district courts. Because § 78y provides for judicial review of final orders of the SEC and not every adverse action by the board would be "encapsulated in a final Commission order or rule," plaintiffs would have been required either (1) to seek SEC review of the board's auditing standards, registration requirements, or other rules, or (2) to invite a sanction from which to appeal by intentionally violating one of the board's rules or by ignoring a request for documents or testimony. *Id.* at 490.

Neither option, the Court said, provided the plaintiffs with meaningful judicial review. The first option was inadequate because the plaintiffs were not challenging any of the auditing standards, registration requirements, or other rules. Forcing plaintiffs "to select and challenge a Board rule at random," the Court explained, would have been "an odd procedure for Congress to choose, especially because only *new* rules, and not existing ones, are subject to challenge." *Id.*, citing 15 U.S.C. §§ 78s(b)(2), 78y(a)(1), 7217(b)(4). The second option was inadequate because courts "normally do not require plaintiffs to 'bet the farm … by taking the violative action' before 'testing the validity of the law.'" *Id.*, quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007), and citing *Ex parte Young*, 209 U.S. 123 (1908).

On the second factor, the Court concluded that the plaintiffs' challenges were "wholly collateral" to the statute's review provisions. Because the plaintiffs were objecting "to the Board's existence" rather than to a specific rule or order by the board, the claims were not of the type Congress intended to funnel into the statutory review scheme. *Id.*, citing *McNary*

*v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 491–92 (1991) (Immigration and Nationality Act limited judicial review of individual amnesty determinations to deportation or exclusion proceedings but did not strip district courts of jurisdiction to hear "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications" for lawful-admission status).

On the third and final factor, *Free Enterprise Fund* concluded that the plaintiffs' challenges fell outside the SEC's "competence and expertise." *Id.* at 491. The plaintiffs' claims were "standard questions of administrative law" that did not "require 'technical considerations of [agency] policy.'" *Id.*, quoting *Johnson v. Robison*, 415 U.S. 361, 373 (1974). The Court distinguished *Thunder Basin Coal* on the ground that the plaintiff's claims there raised issues that the agency had "recently addressed" and with which it had "extensive experience." *Id.*, citing 510 U.S. at 214–15. The Court distinguished *United States v. Ruzicka* on the ground that even though the claims there were "formulated in constitutional terms," they rested ultimately on fact-bound questions about the specific industry regulated by the agency. *Id.*, citing 329 U.S. 287, 294 (1946).

Read broadly, the jurisdictional portion of *Free Enterprise Fund* seems to open the door for a plaintiff to gain access to federal district courts by raising broad constitutional challenges to the authority of the agency where those challenges (1) do not depend on the truth or falsity of the agency's factual allegations against the plaintiff and (2) the plaintiff's claims do not implicate the agency's expertise. That'a how Bebo reads the case. She argues that *Free Enterprise Fund* controls here because her complaint raises facial challenges to

the constitutionality of the enabling statute (§ 929P(a) of
Dodd-Frank) and to the structural authority of the agency
itself, and the merits of those claims do not depend on the
truth or falsity of the SEC's factual claims against Bebo or
implicate the agency's expertise. While Bebo's position has
some force, we think the Supreme Court's more recent dis-
cussion of these issues in the *Elgin* case undermines the
broader reading of the jurisdictional holding of *Free Enter-
prise Fund*.

In *Elgin v. Dep't of Treasury*, 567 U.S. —, 132 S. Ct. 2126
(2012), federal competitive service employees were dis-
charged for failing to comply with the Military Selective Ser-
vice Act, 50 U.S.C. App. § 453. (Another federal statute, 5
U.S.C. § 3328, bars from employment by an executive agency
anyone who has knowingly and willfully failed to register.)
The plaintiffs challenged their terminations before the Merit
Systems Protection Board (MSPB) and lost. Instead of filing
an appeal in the Federal Circuit as prescribed by the Civil
Service Reform Act of 1978 (CSRA), *id.* § 7703(a)(1), (b)(1),
they filed suit in federal district court. They alleged that
§ 3328 was an unconstitutional bill of attainder and, when
combined with the male-only registration requirement of the
Military Selective Service Act, discriminated unconstitution-
ally on the basis of sex.

The *Elgin* plaintiffs relied, as Bebo does here, on *Free En-
terprise Fund* to establish jurisdiction in the district court and
to bypass the statutory route of administrative adjudication
followed by judicial review. They argued that the CSRA re-
view scheme was inadequate because (1) the MSPB lacked
authority to pass on the constitutionality of legislation, (2)
their claims were "wholly collateral" to the CSRA review

scheme because they were facial challenges to the constitutionality of the statutes and did not depend on the factual allegations against the plaintiffs, and (3) the agency had no special expertise to address the merits of their claims. See *Elgin*, 132 S. Ct. at 2136–40. The Court rejected each argument, concluding that it was "fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction" over the plaintiffs' claims. *Id.* at 2140.

In reaching this conclusion, the *Elgin* Court specifically rejected the plaintiffs' argument, advanced by Bebo in this appeal and by the dissent in *Elgin*, that facial constitutional challenges automatically entitled the plaintiffs to seek judicial review in the district court:

> The dissent carves out for district court adjudication only facial constitutional challenges to statutes, but we have previously stated that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). By contrast, a jurisdictional rule based on the type of employee and adverse agency action at issue does not involve such amorphous distinctions. Accordingly, we conclude that the better interpretation of the CSRA is that its exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action.

*Id.* at 2135–36.

The *Elgin* Court also read the jurisdictional portion of *Free Enterprise Fund* narrowly, distinguishing it on grounds directly relevant here. The Court began with the first *Free Enterprise Fund* factor: whether the statutory review scheme provided for meaningful judicial review of the plaintiffs' claims. The Court assumed for the sake of argument that the MSPB could *not* review the constitutionality of the challenged legislation but concluded that this inability did not mean the statutory review system failed to provide meaningful judicial review. *Id.* at 2136–37. Because the CSRA provided review in the Federal Circuit, "an Article III court fully competent to adjudicate petitioners' claims that Section 3328 and the Military Selective Service Act's registration requirement are unconstitutional," the statutory scheme provided an opportunity for meaningful judicial review. *Id.* at 2137.

The Court also rejected the plaintiffs' argument that the CSRA did not provide for meaningful judicial review because the MSPB would not allow them to develop adequately the factual basis for their claims. The Court explained that under the CSRA, the MSPB had the power to take evidence, which was sufficient to provide meaningful judicial review: "Unlike petitioners, we see nothing extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain." *Id.* at 2138.

Turning to the second *Free Enterprise Fund* factor, the *Elgin* Court rejected the plaintiffs' argument that the bill-of-attainder and sex-discrimination claims were "wholly collateral" to the type of personnel actions commonly adjudicated

by the MSPB. The Court explained that even if the claims were not typical of day-to-day personnel cases frequently decided by the MSPB, the plaintiffs' constitutional claims were merely "the *vehicle* by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 2139–40 (emphasis added). "A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme. Likewise, reinstatement, backpay, and attorney's fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide." *Id.* at 2140.

Finally, the *Elgin* Court discussed the third *Free Enterprise Fund* factor, whether the plaintiffs' claims implicated the agency's expertise. Recognizing that no agency had special expertise over bills of attainder or sex discrimination, the Court explained that this way of looking at the issue missed the point:

> But petitioners overlook the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise. Of particular relevance here, preliminary questions unique to the employment context may obviate the need to address the constitutional challenge. For example, petitioner Henry Tucker asserts that his resignation amounted to a constructive discharge. That issue falls squarely within the MSPB's expertise, and its resolution against Tucker would avoid the need to reach his constitutional claims. In

addition, the challenged statute may be one
that the MSPB regularly construes, and its
statutory interpretation could alleviate consti-
tutional concerns. Or, an employee's appeal
may involve other statutory or constitutional
claims that the MSPB routinely considers, in
addition to a constitutional challenge to a fed-
eral statute. The MSPB's resolution of those
claims in the employee's favor might fully dis-
pose of the case. Thus, because the MSPB's ex-
pertise can otherwise be "brought to bear" on
employee appeals that challenge the constitu-
tionality of a statute, we see no reason to con-
clude that Congress intended to exempt such
claims from exclusive review before the MSPB
and the Federal Circuit.

*Id.*, citing *Thunder Basin Coal*, 510 U.S. at 214–15.

*Elgin* established several key points that undermine Be-
bo's effort to skip administrative adjudication and statutory
judicial review here. First, *Elgin* made clear that Bebo cannot
sue in district court under § 1331 merely because her claims
are facial constitutional challenges. Second, it established
that jurisdiction does not turn on whether the SEC has au-
thority to hold § 929P(a) of Dodd-Frank unconstitutional,
nor does it hinge on whether Bebo's constitutional challenges
fall outside the agency's expertise. Third, *Elgin* showed that
the ALJ's and SEC's fact-finding capacities, even if more lim-
ited than a federal district court's, are sufficient for meaning-
ful judicial review. Finally, *Elgin* explained that the possibil-
ity that Bebo might prevail in the administrative proceeding
(and thereby avoid the need to raise her constitutional

claims in an Article III court) does not render the statutory review scheme inadequate.

The remaining issue, though, is whether Bebo's claims are "wholly collateral" to the administrative review scheme. Neither *Elgin* nor *Free Enterprise Fund* clearly defines the meaning of "wholly collateral." Cf. *Elgin*, 132 S. Ct. at 2144–45 (Alito, J., dissenting) (disagreeing with majority that plaintiffs' claims were not wholly collateral to statutory review scheme).

In deciding whether a claim is wholly collateral to the statutory review scheme, should the court focus on the relationship between the merits of the constitutional claim and the factual allegations against the plaintiff in the administrative proceeding? Taking their cue from *Free Enterprise Fund,* that's how some courts have understood the phrase. See *Hill v. SEC*, — F. Supp. 3d —, —, 2015 WL 4307088, at *9 (N.D. Ga. 2015) (finding subject matter jurisdiction to hear claims under Article I, Article II, and Seventh Amendment: "What occurs at the administrative proceeding and the SEC's conduct there is irrelevant to this proceeding which seeks to invalidate the entire statutory scheme."); *Duka v. SEC*, — F. Supp. 3d —, —, 2015 WL 1943245, at *6 (S.D.N.Y. 2015) (finding subject matter jurisdiction to hear claim under Article II: "Similarly, Duka contends that her Administrative Proceeding may not constitutionally take place, and she does not attack any order that may be issued in her Administrative Proceeding relating to 'the outcome of the SEC action.'"); *Gupta v. SEC*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011) (finding subject matter jurisdiction to hear equal protection claim: "These

allegations … would state a claim even if Gupta were entirely guilty of the charges made against him in the OIP.").[2]

Or should the court focus on whether the constitutional claims are being raised as a "vehicle" to challenge agency action taken during an administrative proceeding? Taking their cue from *Elgin*, that is how other courts, including the district court here, have understood the phrase. See *Tilton v. SEC*, No. 15-CV-2472(RA), 2015 WL 4006165, at *12 (S.D.N.Y. June 30, 2015) (finding no subject matter jurisdiction to hear claim under Article II: "Moreover, unlike in *Free Enterprise*, where the petitioners' claims were necessarily collateral to any administrative review scheme because they were not subject to an administrative proceeding at the time they filed their action, Plaintiffs here are already within the review mechanism. Their challenge therefore flows from the fact that they are the subject of the proceeding that they seek to enjoin, and any administrative ruling on their defense will be appealable."); *Bebo v. SEC*, No. 15-C-3, 2015 WL 905349, at *2 (E.D. Wis. Mar. 3, 2015) (finding no subject matter jurisdiction to hear claims under Fifth Amendment and Article II: "This analogy is not enough to escape the clutches of § 78y because in *Free Enterprise*, there was no Board action pending against the petitioners when they brought suit in district court.").

---

[2] Courts following this approach sometimes use the phrase "inextricably intertwined" as shorthand for this way of analyzing the issue. See, e.g., *Heckler v. Ringer*, 466 U.S. 602, 614 (1984) ("We agree with the District Court, however, that those claims are 'inextricably intertwined' with respondents' claims for benefits."); *Bodimetric Health Services, Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 483–84 (7th Cir. 1990).

Both approaches find some support in the Supreme Court's decisions. Compare *Elgin*, 132 S. Ct. at 2139–40, and *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975), which apply the mechanism-of-review approach, with *Free Enterprise Fund*, 561 U.S. at 489–90, *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492–93 (1991), *Bowen v. City of New York*, 476 U.S. 467, 483 (1986), *Heckler v. Ringer*, 466 U.S. 602, 617–18 (1984), and *Mathews v. Eldridge*, 424 U.S. 319, 330–31 (1976), which apply the relationship-of-claims approach. See also *Thunder Basin Coal*, 510 U.S. at 212–13 (collecting cases but not defining "wholly collateral").

At any rate, this unsettled issue does not affect the outcome in this case. We think the most critical thread in the case law is the first *Free Enterprise Fund* factor: whether the plaintiff will be able to receive meaningful judicial review without access to the district courts. The second and third *Free Enterprise Fund* factors, although relevant to that determination, are not controlling, for the Supreme Court has never said that any of them are sufficient conditions to bring suit in federal district court under § 1331. We therefore assume for purposes of argument that Bebo's claims are "wholly collateral" to the administrative review scheme. Even if we give Bebo the benefit of that assumption, we think it is "fairly discernible" that Congress intended Bebo to proceed exclusively through the statutory review scheme established by § 78y because that scheme provides for meaningful judicial review in "an Article III court fully competent to adjudicate petitioners' claims." See *Elgin*, 132 S. Ct. at 2137.

The key factor in *Free Enterprise Fund* that rendered § 78y inadequate is missing here. To have her constitutional objections addressed, Bebo does not need to "select and challenge

a Board rule at random." See *Free Enterprise Fund*, 561 U.S. at 490. Nor does she have to "'bet the farm … by taking the violative action' before 'testing the validity of the law.'" See *id.*, quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007), and citing *Ex parte Young*, 209 U.S. 123 (1908). She is already the respondent in a pending enforcement proceeding, so she does not need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction. After the pending enforcement action has run its course, she can raise her objections in a circuit court of appeals established under Article III. The first, and in our view most important, *Free Enterprise Fund* factor weighs directly against her.[3]

Bebo's counter to this way of synthesizing the cases is that the administrative review scheme established by § 78y is inadequate because, by the time she is able to seek judicial review in a court of appeals, she will have already been subjected to an unconstitutional proceeding. The Supreme Court rejected this type of argument in *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980), holding that the expense and disruption of defending oneself in an administrative proceeding does not automatically entitle a plaintiff to pursue judicial review in the district courts, even when those costs are "substantial."

---

[3] *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), is distinguishable on this basis as well. In *McNary*, there was no provision for direct judicial review of the denial of lawful-admission status unless deportation proceedings were initiated. Thus, aliens could ensure judicial review in a court of appeals only by voluntarily surrendering themselves for deportation. "Quite obviously, that price is tantamount to a complete denial of judicial review for most undocumented aliens." *Id.* at 496–97.

This point is fundamental to administrative law. Every person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress. See *Thunder Basin Coal*, 510 U.S. at 216 ("Nothing in the language and structure of the Act or its legislative history suggests that Congress intended to allow mine operators to evade the statutory-review process by enjoining the Secretary from commencing enforcement proceedings, as petitioner sought to do here."); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002) ("Our obligation to respect the review process established by Congress bars us from permitting Sturm Ruger to make this end run, and requires dismissal of its district court complaint."); *USAA Federal Savings Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988) ("Where, as here, the 'injury' inflicted on the party seeking review is the burden of going through an agency proceeding, [*Standard Oil Co.*] teaches that the party must patiently await the denouement of proceedings within the Article II branch."); *Chau v. SEC*, 72 F. Supp. 3d 417, 425 (S.D.N.Y. 2014) ("This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate."). It is only in the exceptional cases, such as *Free Enterprise Fund* and *McNary*, where courts allow plaintiffs to avoid the statutory review schemes prescribed by Congress. This is not such a case.

We see no evidence from the statute's text, structure, and purpose that Congress intended for plaintiffs like Bebo who are already subject to ongoing administrative enforcement proceedings to be able to stop those proceedings by challenging the constitutionality of the enabling legislation or the

structural authority of the SEC. Unlike in *Free Enterprise Fund*, meaningful judicial review is available to Bebo under § 78y because she does not have to assume the risk of a sanction before testing the validity of the law. If the SEC renders an adverse final decision, judicial review awaits in the court of appeals.

The district court's judgment dismissing the case for lack of subject matter jurisdiction is AFFIRMED.