15-461
*Chau v. S.E.C.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand sixteen.

Present:
> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*,
> CAROL BAGLEY AMON,
> > *District Judge*.[*]

---

WING F. CHAU, HARDING ADVISORY LLC,

> *Plaintiffs-Appellants*,

> v.                                                              15-461-cv

SECURITIES AND EXCHANGE COMMISSION,

> *Defendant-Appellee*.

---

For Plaintiffs-Appellants:           ALEX LIPMAN (Ashley Baynham, Justin S. Weddle, *on the brief* ), Brown Rudnick LLP, New York, N.Y.

---

[*] Judge Carol Bagley Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

1

For Defendant-Appellee:                    DOMINICK V. FREDA (Anne K. Small, Michael A. Conley, Daniel Staroselsky, *on the brief*), Securities and Exchange Commission, Washington, D.C.

Appeal from the judgment and order of the United States District Court for the Southern District of New York (Kaplan, *J.*).

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-Appellee the Securities Exchange Commission ("SEC") brought an administrative proceeding against Plaintiffs-Appellants Harding Advisory LLC and its principal owner, Wing F. Chau (collectively, "Plaintiffs"), for alleged violations of various securities laws. During the pendency of that proceeding, Plaintiffs filed an action in district court alleging that the SEC violated their rights under the Equal Protection Clause by not prosecuting the alleged violations in district court. Plaintiffs now appeal from the judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*) denying their motion for a preliminary injunction and granting the SEC's motion to dismiss for lack of subject matter jurisdiction.

I.     **Background**

On October 18, 2013, the SEC's Division of Enforcement brought an in-house administrative proceeding against Plaintiffs, alleging violations of § 8A of the Securities Act of 1933 (15 U.S.C. § 77a *et seq.*), §§ 203(e), 203(f), and 203(k) of the Investment Advisers Act of 1940 (15 U.S.C. § 80a-1 *et seq.*), and § 9(b) of the Investment Company Act of 1940 (15 U.S.C. § 80b-1 *et seq.*) relating to the management and representation of certain collateralized debt obligations. In response, aside from denying the substance of the SEC's allegations, Plaintiffs alleged, *inter alia*, that by choosing to bring an administrative action rather than file a lawsuit in

2

district court, the SEC violated Plaintiffs' rights under the Equal Protection Clause because it had chosen to proceed in district court in other, allegedly similar cases.[1]

During the pendency of the proceeding, and after the SEC twice rejected Plaintiffs' Equal Protection claim — once by an SEC administrative law judge and once on interlocutory appeal to the Commission — Plaintiffs filed an action in district court based on the same constitutional claims. After initially denying Plaintiffs' request for a preliminary injunction, the district court granted the SEC's motion to dismiss for lack of subject matter jurisdiction, finding, under the Supreme Court's decisions in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1993), and *Free Enterprise v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), that "permitting plaintiffs to seek pre-enforcement relief from the SEC in this case would be 'inimical to the structure and purposes' of the statutory review scheme governing SEC adjudications and would not provide an otherwise unavailable means of effective judicial review." Special App'x 14 (quoting *Thunder Basin*, 510 U.S. at 212–13).

## II. Discussion

Subject matter jurisdiction is a threshold matter. *See Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Plaintiffs must affirmatively demonstrate it by a preponderance of the evidence, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), though we take all facts alleged in the complaint as true and draw all reasonable inferences in Plaintiffs' favor, *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). We review the district court's determination that it lacked subject matter jurisdiction *de novo*. *Tandon v. Captain's Cove Marina Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). We also

---

[1] Plaintiffs also alleged that the SEC violated their Due Process rights, but they do not pursue that claim on appeal.

3

assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We are guided by our recent decision in *Tilton v. S.E.C.*, 824 F.3d 276 (2d Cir. 2016), in which we determined that the district court lacked subject matter jurisdiction over an Appointments Clause challenge to pending administrative proceedings. *Id.* at 291. While the constitutional claim here is different, our analysis in *Tilton* requires that we reach the same result.

Determining whether the district court has subject matter jurisdiction is a two-step process designed to discern congressional intent. *Id.* at 281. First, "we must . . . determine whether it is 'fairly discernible' from the 'text, structure and purpose' of the securities laws that Congress intended the SEC's scheme of administrative and judicial review 'to preclude district court jurisdiction.'" *Id.* (*quoting Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132–33 (2012)). If we answer this question in the affirmative — and no party has argued otherwise — we must then decide whether the claim at issue is "of the type Congress intended to be reviewed within th[e] statutory structure." *Id.* (quoting *Free Enterprise*, 561 U.S. at 489). That inquiry is guided by three factors the Supreme Court has articulated, namely, whether (a) "a finding of preclusion could foreclose all meaningful judicial review," (b) the suit is "wholly collateral to [the] statute's review provisions," and (c) the claims at issue are "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212–13 (internal quotation marks omitted). Notably, the factors are not "inputs into a strict mathematical formula," but rather "are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy v. S.E.C.*, 803 F.3d 9, 17 (D.C. Cir. 2015).

### 1. Meaningful Judicial Review

We have recognized that the first factor — meaningful judicial review — is most important. *See Tilton*, 824 F.3d at 282 (explaining that it "weighs strongly" in the overall analysis); *see also Bebo v. S.E.C.*, 799 F.3d 765, 774 (7th Cir. 2015) (characterizing this factor as "the most critical thread in the case law"); *accord Hill v. S.E.C.*, 825 F.3d 1236, 1245 (11th Cir. 2016). Plaintiffs argue that the statutory scheme does not permit meaningful judicial review of their Equal Protection claim here because (1) as in *Free Enterprise*, they would have to endure the allegedly unconstitutional proceeding before their Equal Protection claim could be heard by this Court or the District of Columbia Circuit, and (2) the SEC's administrative proceedings cannot produce a record adequate to permit meaningful review of Plaintiffs' claim. Both contentions are without merit.

With respect to enduring the administrative proceeding, Plaintiffs are, as in *Tilton* and unlike in *Free Enterprise*, already the subject of such a proceeding, and they have articulated no adequate reason that their constitutional injury is "irremediable after [its] conclusion." *See Tilton*, 824 F.3d at 284; *see also Bebo*, 799 F.3d at 774 (distinguishing *Free Enterprise* because the *Bebo* plaintiff did not need to "risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction"). Accordingly, because "post-proceeding relief, although imperfect" is available — namely through review by a Court of Appeals — it "suffices to vindicate [Plaintiffs'] constitutional claim." *Tilton*, 824 F.3d at 285; *see also F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (finding costs of administrative proceedings to be "part of the social burden of living under government" rather than an irreparable injury (quoting *Petroleum Exploration Inc. v. Pub. Serv. Comm'n*, 304 U.S. 209, 222 (1939))); *Hill*, 825 F.3d at 1245 ("Enduring an unwanted administrative process, even

at great cost, does not amount to an irreparable injury on its own."); *Tilton*, 824 F.3d at 285 (characterizing "financial and emotional costs" of the administrative proceeding as "simply the price of participating in the American legal system" rather than "an irreparable injury").

With respect to the adequacy of the record, Plaintiffs have had — and continue to have — the opportunity to assert their Equal Protection claim and develop a record adequate to support it. While different rules of discovery govern SEC administrative proceedings, the only specific instance of being denied discovery that Plaintiffs identify is the administrative law judge's decision to preclude certain depositions and access to certain documents on privilege grounds. As the district court properly determined, however, that ruling was not unique to the SEC because a district court could have reached the same conclusion.

Plaintiffs' claim that the SEC is biased and therefore has not, and will not, permit development of an adequate record is likewise without merit. Allegations of partiality are not properly addressed until after the SEC has taken concrete action, *i.e.*, after the administrative proceeding is complete. *See Touche Ross & Co v. S.E.C.*, 609 F.2d 570, 575 (2d Cir. 1979) ("Until the Commission has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention."). Moreover, if anything, the SEC's perspective is valuable because it is best situated to articulate the reasons it initiated an administrative proceeding rather than a district court action.[2] *Cf. Moog Indus. v. F.T.C.*, 355 U.S. 411, 413 (1958) (explaining that the Federal Trade Commission

---

[2] The question of whether the SEC is *actually* empowered to rule on Plaintiffs' Equal Protection claim is not relevant. *See Jarkesy*, 803 F.3d at 19 (finding that because the plaintiffs' claims could eventually reach an Article III court, it was "of no dispositive significance whether the Commission ha[d] the authority to rule on them in the first instance during the agency proceedings"); *Bebo*, 799 F.3d at 773 ("[J]urisdiction does not turn on whether the SEC has authority to" rule on the constitutional issue, nor on whether that issue "fall[s] outside the agency's expertise.").

"alone is empowered to develop [the] enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically," and that the relevant factors are "peculiarly within [its] expert understanding").

Further, even if the record developed by the SEC were inadequate, the reviewing Court of Appeals has two means at its disposal to supplement it. First, it can remand the case to the SEC so that "additional evidence [may] be taken . . . in such manner and upon such terms and conditions as the court may [d]eem proper," which can, in turn, lead the SEC to modify its findings. 15 U.S.C. §§ 77i(a), 80a-42(a), 80b-13(a); *see also Hill*, 825 F.3d at 1250; *Jarkesy*, 803 F.3d at 22. Second, the Court of Appeals can "take judicial notice of facts relevant to the constitutional question." *See Elgin*, 132 S. Ct. at 2138; *Hill*, 825 F.3d at 1250; *Jarkesy*, 803 F.3d at 22. Thus, viewed in the context of the full statutory scheme, even if "the ALJ's and SEC's fact-finding capacities . . . [are] more limited than a federal district court's," they are "sufficient for meaningful judicial review." *Bebo*, 799 F.3d at 773; *see also Hill*, 825 F.3d at 1249–50 ("The administrative process includes adequate tools . . . to draw out the facts necessary to mount [a] constitutional challenge" which, "although less robust than those provided by the Federal Rules of Civil Procedure," provide "a meaningful avenue to develop the record."); *id.* at 1250 (finding that the statutory scheme, as a whole, "adequately allows for the development of a sufficient factual record" to permit meaningful judicial review of constitutional claims). Accordingly, the meaningful judicial review factor counsels strongly against the existence of subject matter jurisdiction.

7

## 2. Wholly Collateral

We recognized in *Tilton* that the Supreme Court has not clearly defined the meaning of the "wholly collateral" factor. *See* 824 F.3d at 287. In that case, we followed the Court's decision in *Elgin v. Department of Treasury*, surmising that a claim is not wholly collateral where "it serves as the 'vehicle by which' a party seeks to prevail in an administrative proceeding." *Tilton*, 824 F.3d at 287–88 (quoting *Elgin*, 132 S. Ct. at 2139–40). We do the same here and assume, absent further guidance from the Supreme Court, that a constitutional claim is not wholly collateral when it is "raised in response to, and so is procedurally intertwined with, an administrative proceeding — regardless of the claim's substantive connection to the initial merits dispute in the proceeding." *Id.* at 287.

Unlike in *Free Enterprise*, where the Supreme Court found the plaintiff's challenge to "not [be] moored to any proceeding that would provide for an administrative adjudication and subsequent judicial review," Plaintiffs' Equal Protection claim here "targets an aspect of an ongoing administrative proceeding." *Tilton*, 824 F.3d at 288; *see also Jarkesy*, 803 F.3d at 23–24 (finding that the plaintiff's Equal Protection claim was not wholly collateral in part because it "ar[o]se from actions the Commission took in due course" of the administrative enforcement scheme, which the claim was an attempt to "short-circuit"). It therefore is of the same nature as the claim in *Tilton* such that the wholly collateral factor does not favor the existence of subject matter jurisdiction. *See* 824 F.3d at 288.

## 3. Agency Expertise

In *Elgin*, the Supreme Court adopted a broad view of the agency expertise factor. The Court recognized that there are "many threshold questions that may accompany a constitutional claim and to which [the agency] can apply its expertise," and that it is possible that the agency's

8

resolution of merits questions may "obviate the need to address the constitutional challenge" at all. *Elgin*, 132 S. Ct. at 2140; *see also Tilton*, 824 F.3d at 289–90. Here, the agency expertise factor does not suggest the existence of subject matter jurisdiction for two reasons.

First, as in *Tilton*, the SEC may fully resolve Plaintiffs' Equal Protection claim by disposing of the case in Plaintiffs' favor. *Tilton*, 824 F.3d at 290 ("A favorable Commission order, including one on statutory grounds, would provide an acceptable resolution of the Appointments Clause claim and obviate the need for judicial review" such that "the final *Thunder Basin* factor lends minimal support to the appellants' jurisdictional argument."); *see also Standard Oil*, 449 U.S. at 244 n.11 ("[T]he possibility that [the] challenge may be mooted in adjudication warrants the requirement that [the plaintiff] pursue adjudication, not shortcut it."). While counsel for Plaintiffs maintained at oral argument that Plaintiffs would still suffer damages even if they prevailed before the SEC, a bedrock principle of Plaintiffs' claim is that the SEC brought an administrative proceeding to increase its chances of success. *See* Appellants' Br. at 9 ("[T]he SEC subjected Chau and Harding to its in-house proceeding because, *inter alia*, they knew that the in-house proceedings, unlike federal court, would not afford Chau and Harding a reasonable opportunity to mount a defense in a case of this magnitude and complexity."). We thus fail to see how, in the circumstances of this case, Plaintiffs could maintain a viable Equal Protection claim if they were exonerated by the SEC.

Second, the SEC had, as of the date of Plaintiffs' district court action, ruled on the merits of Plaintiffs' Equal Protection claim once, and subsequently ruled on it a second time. This fact — that the SEC ultimately "prove[d] fully capable of considering" Plaintiffs' constitutional claim — also weighs against the existence of subject matter jurisdiction. *Jarkesy*, 803 F.3d at 28.

Granted, jurisdiction does not, as noted, "hinge" on agency expertise. *Bebo*, 799 F.3d at 773; *see also Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 149 n.9 (2d Cir. 2016). Rather, as in *Tilton*, the existence of meaningful judicial review under the statutory scheme is sufficient on its own to suggest that the district court here appropriately found that it did not have subject matter jurisdiction over Plaintiffs' Equal Protection claim. *See* 824 F.3d at 282; *see also Bebo*, 799 F.3d at 767.

## III. Conclusion

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk